ORIGINAL

# In the United States Court of Federal Claims

No. 17-1363C
Filed March 6, 2018

**FILED**
**MAR - 6 2018**
U.S. COURT OF
FEDERAL CLAIMS

---

| | |
|---|---|
| OLADAPO AD OLAJIDE, ) | |
| ) | |
| Plaintiff, ) | *Pro Se*; RCFC 12(b)(1), Subject-Matter |
| ) | Jurisdiction; RCFC 12(b)(6), Failure to |
| v. ) | State a Claim; Money-Mandating Source |
| ) | of Law; Implied-in-Fact Contract; |
| THE UNITED STATES, ) | Takings. |
| ) | |
| Defendant. ) | |
| ) | |

*Oladapo ad Olajide*, Oakland, CA, plaintiff *pro se*.

*Devin A. Wolack*, Trial Attorney, *Elizabeth M. Hosford*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Chad A. Readler*, Principal Deputy Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

### I. INTRODUCTION

Plaintiff *pro se*, Oladapo ad Olajide, brings this breach of contract and takings action against the United States seeking certain monetary damages and injunctive relief. *See generally* Compl. The government has moved to dismiss the complaint for lack of subject-matter jurisdiction and for failure to state a claim upon which relief may be granted, pursuant to Rules 12(b)(1) and (b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). *See generally* Def. Mot. Plaintiff has also filed a motion to proceed in this matter *in forma pauperis* and a motion requesting that the Court take judicial notice of adjudicative facts. Pl. Mot. for Leave to Proceed *In Forma Pauperis*; Pl. Mot. for Judicial Notice.

For the reasons set forth below, the Court: (1) **GRANTS** the government's motion to dismiss; (2) **GRANTS** plaintiff's motion to proceed *in forma pauperis*; (3) **DENIES as moot**

1

7012 3460 0001 7791 8644

plaintiff's motion requesting that the Court take judicial notice of adjudicative facts; **DENIES as moot** the government's motion for an extension of time to respond to plaintiff's motion requesting that the Court take judicial notice of adjudicative facts; and (4) **DISMISSES** the complaint.

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. Factual Background

Plaintiff *pro se*, Oladapo ad Olajide, commenced this action on September 27, 2017. *See generally* Compl. Plaintiff's complaint is difficult to follow. But, it appears that plaintiff asserts breach of contract, "breach of the implied covenant of trust," and a Fifth Amendment takings claims in the complaint. *Id.* at Counts I, II and III.

In this regard, plaintiff alleges that, after his arrest in 1985, the United States maintained possession of certain of his property rights—including his fingerprints and family name—thereby depriving plaintiff of the use of this property. *See* Compl. at ¶ 10. Specifically, plaintiff alleges that, on or about April 20, 1985, "unknown men [acting on behalf of the United States,] . . . physically took possession" of his person by capturing his "likeness, fingerprints, given names and family name." *Id.* at Ex. A at 2; *see also id.* at ¶ 10(B). Plaintiff also alleges that he became aware more recently that "the United States has executed and used [its] civil legislative powers to regulate the value of [m]oney and commerce as described in the [United States] Constitution to physically take occupancy and possession of his Title of Ownership to his Natural Liberty." *Id.* at ¶ 5. And so, plaintiff claims that the United States has maintained possession of his private property, by keeping and using it "within the United States' debt security instruments, databases, documents and records." *Id.* at ¶ 10(C).

In addition, plaintiff alleges that, on August 22, 2017, he presented "a private bill of exchange" to United States Representative Barbara Lee, "who has the authority to bind the United States in contract." *Id.* at ¶ 7, Ex. A. Plaintiff further alleges that he mailed a "certified agreement" to Representative Lee, specifying the government's failure to respond to plaintiff's

---

[1] The facts recounted in this Memorandum Opinion and Order are taken from plaintiff's complaint ("Compl."), defendant's motion to dismiss ("Def. Mot."), and plaintiff's response and opposition to defendant's motion to dismiss ("Pl. Resp."). Unless otherwise noted herein, the facts recited are undisputed.

private bill of exchange and requesting payment under the government's obligations in the private bill of exchange. *Id.* at ¶ 9, Ex. B.

In this regard, plaintiff contends that Representative Lee failed to rebut any of the claims or facts presented in his private bill of exchange and in his certified agreement. *Id.* at ¶ 9. And so, plaintiff maintains that, by failing to do so, "the United States has agreed and stipulated" to certain facts and that the United States owes him "full payment of his fee for [its] public taking and usage of his exclusive property interest." *Id.* at ¶ 10. As relief, plaintiff seeks, among other things, monetary damages "in the amount of one trillion dollars" and "a writ of mandamus commanding the United States to return to plaintiff his occupancy and possession of his title of ownership to his natural liberty." *Id.* at Prayer for Relief.

### B. Procedural Background

Plaintiff filed the complaint in this matter and a motion to proceed *in forma pauperis* on September 27, 2017. *See generally* Compl.; Pl. Mot. for Leave to Proceed *In Forma Pauperis*. On November 27, 2017, the government filed a motion for summary dismissal of the complaint, pursuant to RCFC 12(b)(1) and (b)(6). *See generally* Def. Mot. On December 11, 2017, plaintiff filed a response and opposition to the government's motion to dismiss. *See generally* Pl. Resp. On February 13, 2018, plaintiff filed a motion requesting that the Court take judicial notice of adjudicative facts. *See generally* Pl. Mot. for Judicial Notice.

The Court resolves the pending motions.

## III. JURISDICTION AND LEGAL STANDARDS

### A. *Pro Se* Litigants

Plaintiff is proceeding in this matter *pro se*. The Court recognizes that parties proceeding *pro se* are granted greater leeway than litigants represented by counsel. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers"). Nonetheless, "[w]hile a court should be receptive to *pro se* plaintiffs and assist them, justice is ill-served when a jurist crosses the line from finder of fact to advocate." *Demes v. United States*, 52 Fed. Cl. 365, 369 (2002). And so, the Court may excuse ambiguities in plaintiff's complaint, but the Court does not excuse the complaint's failures. *See Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995).

3

In addition, this Court has long recognized that "the leniency afforded to a *pro se* litigant with respect to mere formalities does not relieve the burden to meet jurisdictional requirements." *Minehan v. United States*, 75 Fed. Cl. 249, 253 (2007). For this reason, a *pro se* plaintiff—like any other plaintiff—must establish the Court's jurisdiction to consider a claim by a preponderance of the evidence. *Riles v. United States*, 93 Fed. Cl. 163, 165 (2010).

### B. RCFC 12(b)(1)

When deciding a motion to dismiss for lack of subject-matter jurisdiction, this Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); *United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1327-28 (Fed. Cir. 2006); *see also* RCFC 12(b)(1). Plaintiff bears the burden of establishing subject-matter jurisdiction, and he must do so by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). And so, should the Court determine that "it lacks jurisdiction over the subject matter, it must dismiss the claim." *Matthews v. United States*, 72 Fed. Cl. 274, 278 (2006); *see also* RCFC 12(h)(3).

In this regard, the United States Court of Federal Claims is a court of limited jurisdiction and "possess[es] only that power authorized by Constitution and statute . . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Specifically, the Tucker Act grants the Court jurisdiction over:

> [A]ny claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). The Tucker Act is, however, "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976). And so, to come within the jurisdictional reach and waiver of the Tucker Act, a plaintiff must identify and plead a money-mandating constitutional provision, statute or regulation; an express or implied contract with the United States; or an illegal exaction of money by the United States that creates the right to money damages. *Cabral v. United States*, 317 F. App'x 979, 981 (Fed. Cir. 2008) (citing

*Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005)); *see also Martinez v. United States*, 333 F.3d 1295, 1302 (Fed. Cir. 2003). "[A] statute or regulation is money-mandating for jurisdictional purposes if it 'can fairly be interpreted as mandating compensation for damages sustained as a result of the breach of the duties [it] imposes.'" *Fisher*, 402 F.3d at 1173 (quoting *United States v. Mitchell*, 463 U.S. 206, 217 (1983)) (brackets in original). If the Court finds that the source of law alleged is not money-mandating, the Court must dismiss the case for lack of subject-matter jurisdiction. *Id.*; *see also* RCFC 12(b)(1).

### C. RCFC 12(b)(6)

Pursuant to RCFC 12(b)(6), the government may move for dismissal of the complaint if the complaint "fail[s] to state a claim upon which relief can be granted." RCFC 12(b)(6). To survive a motion to dismiss under RCFC 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Pleadings must establish "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555).

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). And so, "a pro se plaintiff still must establish the requisite elements of his claim." *See Sahagun-Pelayo v. United States*, 602 F. App'x 822, 824 (Fed. Cir. 2015) (quoting *Humphrey v. United States*, 52 Fed. Cl. 593, 595 (2002)) (rejecting a *pro se* plaintiff's contract claim under Rule 12(b)(6) where plaintiff failed to allege the actual authority of an individual, specific agents with whom he contracted and where the complaint made legal conclusions not entitled to favorable factual inferences).

### D. Contracts With The United States

Under the Tucker Act, the Court possesses subject-matter jurisdiction to consider express or implied-in-fact contract claims against the United States. *See Aboo v. United States*, 86 Fed. Cl. 618, 626-27 (2009). Plaintiff bears the burden of proving the existence of a contract with the United States and he must demonstrate that there is "something more than a cloud of evidence

5

that could be consistent with a contract to prove a contract and enforceable contract rights." *D & N Bank v. United States*, 331 F.3d 1374, 1376 (Fed. Cir. 2003).

To pursue a breach of contract claim against the United States under the Tucker Act, plaintiff must have privity of contract with the United States. *Flexfab, L.L.C. v. United States*, 424 F.3d 1254, 1265 (Fed. Cir. 2005) (The "government consents to be sued only by those with whom it has privity of contract.") (citations omitted). Plaintiff must also support his contract claim with well-pleaded allegations going to each element of a contract. *See Crewzers Fire Crew Transp. Inc. v. United States*, 741 F.3d 1380, 1382 (Fed. Cir. 2014) (holding that to invoke the jurisdiction of this Court under the Tucker Act, a plaintiff must present a well-pleaded allegation that its claims arose out of a valid contract with the United States); *see also* RCFC 9(k) ("In pleading a claim founded on a contract or treaty, a party must identify the substantive provisions of the contract or treaty on which the party relies."); *Gonzalez-McCaullaey Inv. Grp., Inc. v. United States*, 93 Fed. Cl. 710, 715 (2010).

The requirements for establishing a contract with the United States are identical for express and implied-in-fact contracts. *See Night Vision Corp. v. United States*, 469 F.3d 1369, 1375 (Fed. Cir. 2006); *Huntington Promotional & Supply, LLC v. United States*, 114 Fed. Cl. 760, 767 (2014) ("The elements are the same for an express or implied-in-fact contract . . . ."). Specifically, a plaintiff must show: (1) mutuality of intent; (2) consideration; (3) lack of ambiguity in the offer and acceptance; and (4) actual authority to bind the government in contract on the part of the government official whose conduct is relied upon. *Kam-Almaz v. United States*, 682 F.3d 1364, 1368 (Fed. Cir. 2012); *see also Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997).

A government official's authority to bind the United States must be express or implied. *Roy v. United States*, 38 Fed. Cl. 184, 188-89, *dismissed*, 124 F.3d 224 (Fed. Cir. 1997). And so, "the [g]overnment, unlike private parties, cannot be bound by the apparent authority of its agents." *Id.* at 187. In this regard, a government official possesses express actual authority to bind the United States in contract "only when the Constitution, a statute, or a regulation grants it to that agent in unambiguous terms." *Jumah v. United States*, 90 Fed. Cl. 603, 612 (2009), *aff'd*, 385 F. App'x 987 (Fed. Cir. 2010) (citations omitted); *see also City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990) (citation omitted). On the other hand, a government

official possesses implied actual authority to bind the United States in contract "when the employee cannot perform his assigned tasks without such authority and when the relevant agency's regulations do not grant the authority to other agency employees." *SGS-92-X003 v. United States*, 74 Fed. Cl. 637, 652 (2006) (citations omitted); *see also Aboo*, 86 Fed. Cl. at 627 (stating that implied actual authority "is restricted to situations where 'such authority is considered to be an integral part of the duties assigned to a [g]overnment employee.'") (brackets in original) (quoting *H. Landau & Co. v. United States*, 886 F.2d 322, 324 (Fed. Cir. 1989)). In addition, when a government agent does not possess express or implied actual authority to bind the United States in contract, the government can still be bound by contract if the contract was ratified by an official with the necessary authority. *Janowsky v. United States*, 133 F.3d 888, 891-92 (Fed. Cir. 1998).[2]

### E. Fifth Amendment Takings

The United States Court of Federal Claims has exclusive jurisdiction over Fifth Amendment takings claims in excess of $10,000. 28 U.S.C. § 1491(a); *see also Acceptance Ins. Cos. Inc. v. United States*, 503 F.3d 1328, 1336 (Fed. Cir. 2007). The Takings Clause of the Fifth Amendment guarantees just compensation whenever private property is taken for public use. U.S. CONST. amend. V. The purpose of the Fifth Amendment is to prevent the "[g]overnment from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 123 (1978) (quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1960)); *see also Florida Rock Indus., Inc. v. United States*, 18 F.3d 1560, 1571 (Fed. Cir. 1994).

To have a cause of action for a Fifth Amendment takings, a plaintiff must point to a protectable property interest that is asserted to be the subject of the takings. *See Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164 (1998) ("Because the Constitution protects rather than

---

[2] Ratification may take place at the individual or institutional level. *SGS-92-X003*, 74 Fed. Cl. at 653-54. Individual ratification occurs when a supervisor: (1) possesses the actual authority to contract; (2) fully knew the material facts surrounding the unauthorized action of his or her subordinate; and (3) knowingly confirmed, adopted, or acquiesced to the unauthorized action of the subordinate. *Id.* at 654 (quoting *Leonardo v. United States*, 63 Fed. Cl. 552, 560 (2005)). In contrast, institutional ratification occurs when the government "seeks and receives the benefits from an otherwise unauthorized contract." *Id.* at 654; *see also Janowsky*, 133 F.3d at 891-92.

creates property interests, the existence of a property interest is determined by reference to 'existing rules or understandings that stem from an independent source such as state law.'") (citation omitted). Under the Takings Clause, "property" is defined as a "legally-recognized property interest such as one in real estate, personal property, or intellectual property." *Adams v. United States*, 391 F.3d 1212, 1224 (Fed. Cir. 2004) (clarifying that an ordinary obligation to pay money does not constitute "property" under the Takings Clause). Contract rights can also be the subject of a takings action. *See, e.g., Lynch v. United States*, 292 U.S. 571, 579 (1934) ("Valid contracts are property, whether the obligor be a private individual, a municipality, a state, or the United States.").

In addition, courts have traditionally divided the analysis of Fifth Amendment takings into two categories—regulatory takings and physical takings. In this regard, the United States Court of Appeals for the Federal Circuit has recognized that "[g]overnment action that does not directly appropriate or invade, physically destroy, or oust an owner from property but is overly burdensome may be a regulatory taking." *A & D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1151 (Fed. Cir. 2014). In assessing whether a regulatory takings has occurred, courts generally employ the balancing test set forth in *Penn Central*, weighing the character of the government action, the economic impact of that action, and the reasonableness of the property owner's investment-backed expectations. *Penn Central Transp. Co.*, 438 U.S. at 124-25. "The general rule at least is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Penn. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922); *see also Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005) (holding a regulation is a takings if it is "so onerous that its effect is tantamount to a direct appropriation or ouster").

In contrast, physical or *per se* takings occur when the government's action amounts to a physical occupation or invasion of the property, including the functional equivalent of "a practical ouster of [the property owner's] possession." *Transportation Co. v. Chic.*, 99 U.S. 635, 642 (1879); *see also Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 427-28 (1982). When an owner has suffered a physical invasion of his property, the United States Supreme Court has noted that "no matter how minute the intrusion, and no matter how weighty the public purpose behind it, we have required compensation." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015, 112 S. Ct. 2886, 120 L. Ed. 2d 798 (1992). The distinction between a physical invasion and a governmental activity that merely impairs the use of that property turns

8

on whether the intrusion is "so immediate and direct as to subtract from the owner's full enjoyment of the property and to limit his exploitation of it." *United States v. Causby*, 328 U.S. 256, 265, 66 S. Ct. 1062, 90 L. Ed. 1206 (1946).

## IV. DISCUSSION

The government has moved to dismiss this action upon three grounds: First, the government argues that the Court should dismiss this matter for lack of subject-matter jurisdiction, because plaintiff does not allege a violation of a money-mandating federal statute or regulation in the complaint. Def. Mot. at 4; *see also* RCFC 12(b)(1). Second, the government argues that dismissal of the complaint is also warranted, because the complaint does not plausibly establish the existence of either an express or implied-in-fact contract between plaintiff and the government. Def. Mot. at 5; *see also* RCFC 12(b)(6). Lastly, the government argues that the Court should also dismiss this matter because plaintiff fails to allege a plausible takings claim. Def. Mot. at 6; *see also* RCFC 12(b)(6).

For the reasons set forth below, a careful reading of the complaint shows that plaintiff has not established the existence of an express or implied-in-fact contract with the government. Plaintiff also fails to identify a government action that resulted in the alleged taking of his property in the complaint. In addition, plaintiff fails to identify a money-mandating source of law that would otherwise permit him to bring this action under the Tucker Act. And so, the Court **GRANTS** the government's motion to dismiss and dismisses this matter pursuant to RCFC 12(b)(1) and (b)(6).

### A. The Court May Not Consider Plaintiff's Breach Of Contract Claim

As an initial matter, the Court must dismiss plaintiff's breach of contract claim for lack of subject-matter jurisdiction. RCFC 12(b)(1). A careful reading of the complaint shows that plaintiff has not established that he has entered into either an express or an implied-in-fact contract with the United States. *Mitchell*, 463 U.S. at 216-17.

In this regard, it is well-established that plaintiff bears the burden of proving the existence of an express or implied contract with the United States. *See D & N Bank*, 331 F.3d at 1376. To do so, plaintiff must allege facts in the complaint that plausibly demonstrate: (1) mutuality of intent; (2) consideration; (3) lack of ambiguity in the offer and acceptance; and (4)

actual authority to bind the government in contract on the part of the government official whose conduct is relied upon. *Kam-Almaz*, 682 F.3d at 1368; *see also Trauma Serv. Grp.*, 104 F.3d at 1325. In addition, plaintiff must demonstrate that there is "something more than a cloud of evidence that could be consistent with a contract to prove a contract and enforceable contract rights." *D & N Bank*, 331 F.3d at 1376.

Plaintiff does not sufficiently allege facts in the complaint to establish that he has entered into either an express or implied-in-fact contract with the government in this case. In the complaint, plaintiff alleges that he entered into a binding contract with the government because he mailed a private bill of exchange and a certified agreement to Representative Barbara Lee. Compl. at ¶ 10. But, even if the Court accepts that plaintiff's mailings constitute a valid offer to enter into a contract, plaintiff alleges no facts to establish that a government representative with the authority to bind the government in contract actually accepted this offer. Def. Mot. at 2, 5-6; Compl. at ¶¶ 7, 21; *see also Kam-Almaz*, 682 F.3d at 1368; *Jumah*, 90 Fed. Cl. at 612.

Indeed, while plaintiff maintains that Representative Lee accepted his offer by simply failing to respond to his mailings, such silence is not sufficient to contractually bind the government. *See Northrop v. United States*, No. 06-294 C, 2006 WL 5649845, at *1 (Fed. Cl. July 19, 2006) (quoting *Harbert/Lummus Agrifuels Projects v. United States*, 142 F.3d 1429, 1434 (Fed. Cir. 1998); *see also Bedell v. United States*, No. 15-522C, 2015 WL 4481266, at *2 (Fed. Cl. July 22, 2015) (holding that "[a]ctive acceptance, however, not silence, is required for the government to be bound by a contract"). Given this, plaintiff has not established the existence of a valid contract with the United States in the complaint. And so, plaintiff fails to establish that the Court possesses subject-matter jurisdiction to consider his breach of contract claim. RCFC 12(b)(1).[3]

### B. Plaintiff Fails To State A Plausible Takings Claim

The Court must also dismiss plaintiff's takings claim. Even the most generous reading of the complaint makes clear that plaintiff fails to state a plausible takings claim. RCFC 12(b)(6).

---

[3] Because plaintiff's "breach of implied covenant of trust" claim appears to be based upon his breach of contract claim, the Court also dismisses this claim pursuant to RCFC 12(b)(1).

10

It is well-established that, to allege a plausible takings claim, plaintiff must identify a cognizable property interest and a government action that resulted in the taking of his property. *A & D Auto Sales, Inc.*, 748 F.3d at 1151; *Huntleigh USA Corp. v. United States*, 525 F.3d 1370, 1377-78 (Fed. Cir. 2008). In the complaint, plaintiff appears to allege an unconstitutional takings resulted from his arrest in 1985. Compl. at ¶¶ 5, 10(B). But, to the extent that plaintiff is challenging his arrest, he asserts either a *habeas corpus* or due process claim that falls outside of the Court's limited jurisdiction under the Tucker Act. *See LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (holding that the Due Process Clause of the Fifth Amendment is not a sufficient basis for jurisdiction under the Tucker Act because it does not mandate payment of money by the government); *Ledford v. United States*, 297 F.3d 1378, 1381 (Fed. Cir. 2002) (finding that the Court of Federal Claims is not empowered to grant a writ of *habeas corpus*); *see also Crocker v. United States*, 125 F.3d 1475, 1476 (Fed. Cir. 1997); *cf. United States v. Connolly*, 716 F.2d 882, 887 (Fed. Cir. 1983) (finding that the Court of Federal Claims has no jurisdiction based on the First Amendment).

In addition, to the extent that plaintiff identifies a cognizable property interest in the complaint, he fails to allege any facts regarding the government action that resulted in the alleged taking of this property. Plaintiff alleges, among other things, that the United States maintained possession of his private property "by keeping and using [it] within the United States' debt security instruments, databases, documents and records." Compl. at ¶ 10(C). But, plaintiff does not identify a particular federal law or regulation that caused this alleged taking to occur. *See generally* Compl. Because the complaint is devoid of any factual allegations to identify the government action that resulted in the alleged taking of plaintiff's property, the Court must dismiss plaintiff's takings claim. RCFC 12(b)(6).

### C. Plaintiff Fails To Identify A Money-Mandating Source Of Law

Lastly, to the extent that the complaint can be reasonably construed to allege a claim based upon a violation of a federal statue or regulation, plaintiff fails to identify a money-mandating source of law upon which to base his claims. *Fisher*, 402 F.3d at 1172. Plaintiff fails to point to a money-mandating federal statute on regulation that could form the legal basis of his claims in the complaint. *See generally* Compl. Given this, plaintiff has simply not established that the Court possesses subject-matter jurisdiction to consider these claims. RCFC 12(b)(1).

### D. The Court Grants Plaintiff's Motion To Proceed *In Forma Pauperis* And Denies Plaintiff's Motion To Take Judicial Notice Of Adjudicative Facts

As a final matter, plaintiff has filed a motion to proceed in this litigation without paying the Court's filing fee and a motion requesting that the Court take judicial notice of certain adjudicative facts. Pl. Mot. for Leave to Proceed *In Forma Pauperis*; Pl. Mot. for Judicial Notice. Pursuant to 28 U.S.C. § 1915, this Court may authorize commencement of a suit without prepayment of fees when a plaintiff is "unable to pay such fees or give security therefor." *Moore v. United States*, 93 Fed. Cl. 411, 413 (2010); *see also* 28 U.S.C. § 1915(a)(1). The decision to allow a plaintiff to proceed *in forma pauperis* "is left to the discretion of the presiding judge, based on the information submitted by the plaintiff." *Moore*, 93 Fed. Cl. at 413. In addition, courts have interpreted inability to pay to mean that "paying such fees would constitute a serious hardship on the plaintiff, not that such payment would render plaintiff destitute." *Id.* at 414 (citing *Fiebelkorn v. United States*, 77 Fed. Cl. 59, 62 (2007)) (internal quotation marks omitted).

In this case, plaintiff states that he is currently unemployed and unable to pay the Court's filing fee. Pl. Mot. for Leave to Proceed *In Forma Pauperis*. Because plaintiff has demonstrated that the requirement to pay the Court's filing fee would constitute a serious financial hardship, the Court **GRANTS** plaintiff's motion to proceed *in forma pauperis* for the limited purpose of resolving jurisdictional issues raised in the government's motion to dismiss. In addition, because the Court concludes that it does not possess subject-matter jurisdiction to consider plaintiff's contract claims—and that plaintiff fails to allege a plausible takings claim—the Court denies as moot plaintiff's motion requesting that the Court take judicial notice of adjudicative facts.

### V. CONCLUSION

In sum, when read in the light most favorable to plaintiff, the complaint makes clear that plaintiff has not established the existence of an express or implied-in-fact contract with the government to establish that the Court possesses subject-matter jurisdiction to consider his breach of contract and "breach of the implied covenant of trust" claims. Dismissal of plaintiff's takings claim is also warranted, because plaintiff fails to identify any government action that could have resulted in the alleged taking of his property. Plaintiff also fails to identify a money-mandating source of law that would otherwise permit him to bring his claims under the Tucker Act.

Because the Court does not possess subject-matter jurisdiction to consider plaintiff's contract claims—and that plaintiff fails to allege a plausible takings claim—plaintiff's motion requesting that the Court take notice of certain adjudicative facts is moot. Lastly, plaintiff has demonstrated that he is entitled to a waiver of the Court's filing fee.

And so, for the foregoing reasons, the Court:

(1) **GRANTS** the government's motion to dismiss;

(2) **GRANTS** plaintiff's motion to proceed *In Forma Pauperis*;

(3) **DENIES as moot** plaintiff's motion requesting that the Court to take judicial notice of adjudicative facts;

(4) **DENIES as moot** the government's motion for an extension of time to respond to plaintiff's motion requesting that the court take judicial notice of adjudicative facts; and

(5) **DISMISSES** the complaint.

The Clerk's Office is directed to **ENTER** judgment accordingly.

Lastly, plaintiff has filed three cases before this Court—including this matter—since November 2015 that have been dismissed upon jurisdictional grounds. *See Olajide v. United States*, Case No. 16-1594C, 2017 WL 3225048 (Fed. Cl. July 31, 2017); *see also Olajide v. United States*, 124 Fed. Cl. 196 (2015).[4] Given this, it is further **ORDERED** that, the Clerk is directed to accept no further filings by Oladapo ad Olajide without an Order granting leave to file such filings from the Chief Judge of the United States Court of Federal Claims. In seeking leave to file any future actions, Mr. Olajide shall explain how his complaint raises new matters properly before this Court. *See* RCFC 11(b) and (c) (barring the filing of unwarranted or frivolous claims that have no evidentiary support).

---

[4] In earlier cases, Mr. Olajide represented that his name was "Olanapo." A comparison of the complaints and pleadings of all three cases demonstrates that the plaintiff in all three cases is Mr. Olajide.

13

No costs.

IT IS SO ORDERED.

_____
LYDIA KAY GRIGGSBY
Judge